IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RAYMOND EDWARD CHESTNUT, | ) | |
|     Petitioner, | ) | Civil Action Nos. 7:19-cv-00455 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| D. LUE, Acting Warden, | ) |     United States District Judge |
|     Respondent. | ) | |

MEMORANDUM OPINION

Raymond Edward Chestnut, a federal inmate proceeding *pro se*, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, alleging that he was denied due process during prison disciplinary proceedings.[1] In this case, Chestnut originally challenged a number of different disciplinary proceedings,[2] but in his latest motion to amend his petition, he challenges only the disciplinary proceedings arising from Incident Report ("IR") 3233504. (Dkt. No. 18.) For the reasons discussed in more detail below, the court concludes that respondent is entitled to summary judgment as to Chestnut's claims arising from those proceedings.

---

[1] At the time he filed this petition, Chestnut was incarcerated at USP Lee in Pennington Gap, Virginia, and he properly names the warden of USP Lee as the respondent to his § 2241 petition. Because USP Lee is located within the jurisdiction of this court, *see* 28 U.S.C. § 127(b), the petition is properly before the court.

[2] Of the proceedings challenged in his original petition, Chestnut also challenged four of them separately in other cases and he then voluntarily withdrew those claims. Those four are the proceedings arising from IR 3216108, IR 3218205, IR 2449091, and IR 2674169, which were asserted and then voluntarily dismissed in Case Nos. 7:19-cv-383, 7:19-cv-384, 7:19-cv-405, and 7:19-cv-407, respectively. Two other IR proceedings listed in his original petition in this case will not be addressed here because they are challenged separately in other pending cases: IR 3222788 (Case No. 7:19-cv-430) and 3217762 (Case No. 7:19-cv-367).

I. BACKGROUND

A. Procedural History[3]

Chestnut is a prolific filer of challenges to Bureau of Prisons ("BOP") disciplinary hearings, having filed over 430 Disciplinary Hearing Officer ("DHO") Hearing Appeals since his incarceration in 2008. According to respondent, Chestnut also has filed almost one hundred § 2241 petitions in federal courts since 2013. That includes a number of § 2241 petitions in this court challenging various of his disciplinary convictions, primarily on due process grounds. Although some of his petitions in this court were dismissed by the court or voluntarily dismissed by Chestnut, there are currently four ripe petitions before the court, and another to which respondent's answer is not yet due.[4]

In his latest motion to amend his petition in this case (Dkt. No. 18), which is unopposed by respondent (Dkt. No. 21), Chestnut challenges only IR 3233504. Accordingly, the court will grant his motion to amend (Dkt. No. 18) and will address in this case only his challenges to IR 3233504.[5]

---

[3] Chestnut occasionally has filed motions that list multiple cases and multiple disciplinary proceedings, making it difficult to parse out the specific challenges raised in some of his cases. Chestnut also has repeatedly asked for expedited processing of various petitions, but then has filed motions to amend and other motions that have required additional time for the court to review. For those cases that remain pending, Chestnut is encouraged to refrain from filing multiple amended petitions and repetitive motions, which can often serve to slow the resolution of a case.

[4] The not-yet-ripe case is Civil Action No. 7:19-cv-612, and it challenges, on the same grounds, the same disciplinary proceeding challenged in this case—IR 3233504. In light of the court's rulings in the case at bar, that additional, duplicate petition will be denied, as well. As numerous courts have recognized, there is no right to proceed in multiple, separate cases against the same party on the same claims. *E.g.*, *Bey v. Virginia*, No. 1:13cv102, 2014 WL 12607846, at *1 (E.D. Va. Jan. 31, 2014) ("Plaintiffs have no right to 'maintain two separate actions involving the same subject matter at the same time . . . against the same defendant[s].'" (quoting *Olinev v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985)).

[5] Chestnut misinterpreted the respondent's non-opposition to his motion to amend to be that respondent did not oppose the relief sought. (*See* Dkt. No. 23.) The court, however, did not interpret it that way, and respondent quickly clarified that it simply does not object to the amendment, not that it agrees that there was a violation or that petitioner is entitled to any relief. (Dkt. No. 24.)

The United States has moved to dismiss or, in the alternative, for summary judgment, and Chestnut has responded. Although the parties disagree as to whether Chestnut's failure to exhaust his claims should be excused, this court will treat his claims in this case as exhausted for purposes of this opinion.[6] Thus, the court does not address the facts or the legal arguments concerning exhaustion. Instead, the court concludes that Chestnut is not entitled to relief because he has not shown a violation of his due process rights.

**B. Factual Background as to IR 3233504**[7]

IR 3233504 arose from a March 13, 2019 incident that occurred while Chestnut was incarcerated at the Federal Correctional Institution 2 in Butner, North Carolina. According to the IR, Chestnut was being escorted from a holding cell to the property room so that he could obtain his property. The IR alleged that Chestnut repeatedly failed to comply with staff requests to walk, instead choosing to sit or lie on the floor, and that he eventually spit at one of the escorting officers, Officer Stoots, striking him "on the left check . . . and across the breach of [his] nose." This resulted in Chestnut being placed on the floor and leg restraints being applied. He was then placed in a holding cell for purposes of a medical evaluation, which revealed no injuries to him.

At the DHO hearing held on March 27, 2019, Chestnut denied the charges, asserting instead that Officer Stoots had fabricated the incident and that the other staff members present (all of whom gave statements consistent with Stoots's statement) had conspired to create the false narrative.

---

[6] It appears that Chestnut made some effort to exhaust *after* filing this case, and then filed another § 2241 petition, also challenging IR 3233504, Case No. 7:19-cv-612. *See supra* note 4.

[7] The DHO report for IR 3233504 and related documents are Attachment J to the affidavit of Tiffanie Little. (Dkt. No. 15-11.)

The DHO found that Chestnut had committed the prohibited act of assault without serious injury, code 224. In ruling against Chestnut, the DHO stated that he "considered" the video footage of the incident, which had been reviewed by Chestnut's staff representative. That representative described the video as "inconclusive" as to whether Chestnut spit on staff, based on the camera's distance from the events. The DHO also relied on memos from other officers present, injury assessments of Chestnuts and the officers, and photos of those involved. The DHO explained that he did not find Chestnut credible and that he did not believe the officers had any reason to make up a false report about his behavior or to conspire about it, while Chestnut did have a motive to lie about the events. The DHO further noted that Chestnut's "extensive disciplinary history of staff assaults, threatening, insolence, and refusing to obey orders" led the DHO to believe that Chestnut was not credible. (Dkt. No. 15-11 at 1–3.)

The DHO imposed the following sanctions: (1) disallowance of 27 days of good time credit; (2) forfeiture of 27 days of non-vested good time credit; and (3) 15 days of disciplinary segregation. (*Id.* at 3.)

In earlier petitions, Chestnut asserted two challenges to the proceedings. First, he alleged that he was denied due process when the DHO failed to consider all presented documentary evidence, and, in particular, "failed to consider" the videotape. Second, he claimed that he was denied due process when the DHO refused to allow Chestnut's requested witness, Investigator Moore, to testify. (Dkt. No. 11-1 at 17–18.) In his second amended petition, he emphasizes that he requested Moore as a witness prior to the hearing, and alleges that the DHO was biased because he did not allow Moore to testify. (Dkt. No. 18-2 at 5–6.)

Having reviewed the record, the court concludes Chestnut cannot establish a due process violation as a matter of law.

## II.  DISCUSSION

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Constitutional Amendment XIV § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). It is well established that the loss of earned good time credits, which was part of Chestnut's penalty for IR 3233504, is an interest sufficient to invoke the protections of due process. *Wolff v. McDonnell*, 418 U.S. 539 (1974). But defendants contend that Chestnut was not denied due process during his hearing or the appeal process. (Mem. Supp. Mot. Summ. J. 24–25, Dkt. No. 15.) The court agrees.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Instead, the inmate must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67)).

It does not appear that Chestnut is challenging the sufficiency of the evidence against him here, but to the extent he is, there is "some evidence" supporting the DHO's conclusions, all that is required. *Hill*, 472 U.S. at 454, 456 (holding that due process was satisfied if "the findings of the prison disciplinary board are supported by some evidence in the record" and explaining that "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators [in disciplinary proceedings] that have some basis in

fact").

The Fourth Circuit has recently clarified that a different standard applies, however, to procedural due process challenges in this context, such as Chestnut's claims here that the DHO did not consider the video evidence and that Chestnut was not permitted to call the witness he wanted. *Lennear v. Wilson*, 937 F.3d 257, 276–77 (4th Cir. 2019) (explaining that the "some evidence" standard of *Hill* is inapplicable when a court is considering "whether prison officials' failure to disclose or consider testimonial or documentary [evidence] was harmless"). Specifically, the court should instead determine whether the excluded evidence could have "aided" the inmate's defense. *Id.*

Applying that standard and considering all of the record evidence, the court concludes that there is no evidence from which a reasonable factfinder could conclude that that the failure to review the video evidence or the failure to allow Morgan as a witness was a due process violation. Moreover, the mere fact that the DHO did not allow Morgan to testify is insufficient to establish bias.

## A. Failure to Consider Video Evidence

Construed liberally, Chestnut is complaining that the DHO did not review the video of the incident, which Chestnut contends would have shown that he did not spit on any officer. In fact, however, while it is not clear whether the DHO himself reviewed the video, Chestnut's own staff representative reviewed the video and explained to the DHO that it was inconclusive. There is no reason that the DHO could not rely on Chestnut's own representative's statements to determine that the DHO did not also need to review the video.

As noted, moreover, in order to show a procedural due process violation, there must be evidence that the document would have "aided the [inmate's] defense." *Lennear*, 937 F.3d at

277. The record before this court contains the uncontradicted statement of Chestnut's representative, which is that the video was inconclusive as to whether or not Chestnut spit on Officer Stoots, based on the distance of the camera from the events at issue and the resulting lack of clarity of the events. Thus, unlike in *Lennear*,[8] the only evidence of record here contradicts any assertion that the video would have "aided [Chestnut's] defense." Accordingly, the DHO's failure to "consider" the video, which is the challenge raised by Chestnut, was not a due process violation.

**B. Failure to Call Moore As a Witness**

It is well established that "[p]rison officials must have the necessary discretion to keep [a disciplinary] hearing within reasonable limits . . . [by] refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff*, 418 U.S. at 566. The Supreme Court expressly "stop[ped] short of imposing a more demanding rule with respect to witnesses and documents." *Id.* at 567; *see Brown v. Braxton*, 373 F.3d 501, 505 (4th Cir. 2004) ("hearing officers . . . may decide that legitimate penological interests justify the denial of an individual inmate's witness request, and their decisions are not to be lightly second-guessed by courts far removed from the demands of prison administration").

In *Lennear*, the Fourth Circuit emphasized, though, that prisoners have a qualified right to present a witnesses and documentary evidence, and that the ability of prison officials to prevent a witness's testimony on security grounds is limited. Here, the DHO did not articulate (or at least did not adequately explain) any security risk caused by Moore's testimony. Instead, the DHO's report simply states that Moore could not testify because she was investigating the

---

[8] In *Lennear*, there was no evidence that the district court, the hearing officer, or anyone else had viewed the video, and thus the appellate court concluded that it could not know whether it would have aided the petitioner's defense. *Id.* at 278.

7

same incident as a use of force by staff. (Dkt. No. 15-11 at 1–2.) Nowhere does the DHO report suggest or explain how that would pose a security risk nor does respondent make any such argument. Moreover, the *Lennear* court was clear that this court may not "speculate" as to the officials' reasons; instead, it is the respondent's obligation to identify a valid penological reason for the decision. 937 F.3d at 270.

Regardless, and even if there were not a valid reason for excluding Moore as a witness, Chestnut has failed to establish a due process violation because any error was harmless. Put differently, Chestnut cannot show—as he must—that Moore's testimony would have "aided" his defense. *See id.* at 277 (explaining that in order to show a procedural due process violation, there still must be evidence that the document would have "aided the [inmate's] defense"). Critically, Chestnut told the DHO that the only reason he wanted Moore to testify was so that she could review the video and tell the DHO what it showed. But the DHO had that information about the video already—from Chestnut's own representative.

Moreover, a summary of Moore's investigative report is in the record and is not favorable to Chestnut. Instead, after her investigation of the incident, Moore concluded that the IR had "enough validity to process further" and that the charges were "accurate." (Dkt. No. 15-11 at 9.) Thus, Moore's testimony plainly would not have aided Chestnut's defense. Accordingly, any error in excluding Moore was harmless and did not give rise to a de process violation.

## C. Biased DHO

For like reasons, Chestnut's claim that the DHO was biased fails. An inmate facing disciplinary charges has the right to an impartial decisionmaker. *Wolff*, 418 U.S. at 571. Prison hearing officers are not held to the same standard of neutrality as judges in criminal proceedings, however. *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). In order for this court to find the

8

DHO less than impartial, "there must be some substantial countervailing reason to conclude that [she was] actually biased with respect to factual issues being adjudicated." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004); *see Wolff*, 418 U.S. at 592 (Marshall, J., concurring) ("Due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or had any other form of personal involvement in the case.").

Chestnut's claim that the DHO was not impartial or neutral is based only on the DHO's decision to exclude Moore's testimony. As explained in the preceding section, that decision was harmless error, at most. Without more, neither that decision nor the DHO's decision to believe the officers instead of believing Chestnut is evidence of partiality or bias. *See Brown v. Angelone*, 938 F. Supp. 340, 345 (W.D. Va. 1996). This claim fails, too.

### III. CONCLUSION

For the reasons stated, the court concludes that respondent is entitled to summary judgment as to Chestnut's due process claims in this case. Accordingly, the court will grant the respondent's motion for summary judgment and dismiss this case with prejudice. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for the respondent.

Entered: November 27, 2019.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge